UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 10-12013-RWZ


RICHARD NUNES, _et al._

v.

UMASS CORRECTIONAL HEALTH, _et al._


MEMORANDUM OF DECISION
October 3, 2013


ZOBEL, D.J.

Plaintiff Richard Nunes, a state prisoner, brings suit on behalf of himself and similarly situated inmates, against UMass Correctional Health, the Massachusetts Department of Correction, and several individual employees of both entities ("defendants").  He claims a newly enacted policy prohibiting him from self-administering his HIV medication violates the Eighth Amendment (Count I), the Equal Protection Clause of the Fourteenth Amendment (Count II),[1] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794-794a et seq. ("RA") (Count III), Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq. ("ADA") (Count IV), and his right to privacy under the Fourteenth Amendment (Count V).  Defendants move for summary judgment.

I.    **Background**

---

[1]Plaintiff has since stated he does not oppose defendants' motion for summary judgment on Count II.  See Pls.' Consol. Mem. in Opp. to Defs.' Mot. for Summ. J., Docket # 98, at 7.

Plaintiff earlier moved for a preliminary injunction against enforcement of the new protocol requiring HIV-positive inmates to stand in line at the Health Services Unit to receive their medications, as well as an order allowing him to resume self-administering his medication.  I denied the motion after defendants permitted plaintiff to travel to and from the medication line more comfortably and follow a different procedure when he is too ill to do so.

## II.     Legal Standard

Summary judgment will be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The court must view the record in the light most favorable to the nonmovant and draw all justifiable inferences in that party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## III.    Analysis[2]

### A.     Count I: Eighth Amendment

Plaintiff must meet two requirements to demonstrate he suffered cruel and unusual punishment that violates the Eighth Amendment.  First, he must show that he suffered an objectively serious harm or deprivation.  Second, he must prove that the prison officials responsible for that deprivation acted with deliberate indifference to his serious medical need.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference is defined as the "unnecessary and wanton infliction of pain."  Estelle v.

---

[2]Because plaintiffs' claims fail on their merits, I do not analyze defendants' arguments regarding failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e, et seq.

Gamble, 429 U.S. 97, 104 (1976) (quotation and citation omitted).

Plaintiff has not shown that prison officials acted with deliberate indifference because the new protocol simply administers the same care in a different manner. "Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, deliberate indifference may be found where the attention received is so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (internal quotations and citations omitted). Plaintiff does not challenge the quality of the treatment offered and defendants have reasonably addressed his burdens on accessing that treatment under the new protocol. The facts do not establish any Eighth Amendment violations.

**B.     Counts III and IV: RA and ADA[3]**

To demonstrate an ADA violation, plaintiff must establish that (1) he has a disability; (2) he was excluded from participating in, or denied the benefits of a public entity's[4] services, programs, or activities, or was otherwise discriminated against; and (3) the exclusion, denial of benefits, or discrimination was because of his disability. Kiman v. N.H. Dep't of Corrs., 451 F.3d 274, 283 (1st Cir. 2006) (quotation and citation omitted).  A public entity must "'make reasonable modifications[5] in policies, practices,

---

[3]The liability standards under § 504 of the RA and Title II of the ADA are the same, and courts "rely interchangeably on decisional law applying § 504" when applying Title II.  Parker v. Universidad de Puerto Rico, 225 F.3d 1, 4 (1st Cir. 2000); see 29 U.S.C. § 794(d); 42 U.S.C. §§ 12134(b), 12201(a).

[4]A state prison is a "public entity" for ADA purposes.  Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998).

[5]Although the Department of Justice regulations implementing Title II use the phrase "reasonable modifications" instead of Title I's "reasonable accommodations," the terms create identical standards, and I use them interchangeably.  See McGary v. City of Portland, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004); Parker, 225 F.3d at 5 n.5.

or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . . .'" Id. (quoting 28 C.F.R. § 35.130(b)(7)).  A "reasonable modification" gives "meaningful access" to the program or services sought.  Alexander v. Choate, 469 U.S. 287, 301 (1985); see Bibbo v. Mass. Dep't of Corr., No. 08-10746-RWZ, 2010 WL 2991668, at *1 (D. Mass. July 26, 2010) ("A reasonable accommodation does not require the public entity to employ any and all means to make services available to persons with disabilities."); cf. Bell v. Wolfish, 441 U.S. 520, 540 n.23 (1979) (stating courts should defer to the better-informed views of prison administrators regarding the reasonableness of a given accommodation).

The undisputed facts show defendants provided plaintiff reasonable accommodations.  Indeed, the inmates who have sought accommodations have received them.  The preliminary injunction ruling addressed plaintiff's request, see Docket ## 57, 66, and defendants honored co-plaintiff John Doe's request to attend an early evening medication line.  Docket # 99, SOF ¶ 191.  No other similarly situated inmates have requested accommodation.  Id. ¶¶ 186, 196-97.  Plaintiff has not cited any evidence that defendants have denied him or others "meaningful access" to the prison's medical services.  Choate, 469 U.S. at 301.  Summary judgment is therefore appropriate.

### C.     Count V: Right to Privacy

Plaintiff alleges the new protocol violates his right to privacy because of the likelihood that his HIV status will be disclosed if he participates in the medication line. It is not clear that the right plaintiff claims defendants violated exists.  The Supreme

Court has not decided whether the Fourteenth Amendment includes a right against public disclosure of private medical information, see Nat'l Aeronautics & Space Admin. v. Nelson, 131 S. Ct. 746, 756-57 (2011), and the question remains open in the First Circuit. Coughlin v. Town of Arlington, No. 10-10203-MLW, 2011 WL 6370932, at *13 (D. Mass. Dec. 19, 2011).

Even if plaintiff has a right to privacy, defendants have not violated it because the new protocol is rationally connected to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89 (1987).[6] Safeguarding the health of inmates is a legitimate penological interest, Cryer v. Mass. Dep't of Corr., 763 F. Supp. 2d 237, 250 (D. Mass. 2011), as is conserving financial resources. Klein v. Tocci, No. 09-11248-GAO, 2010 WL 2643414, at *2 (D. Mass. July 1, 2010). Attending the medication line safeguards inmate health because it allows prison medical staff to watch inmates take their medications and thereby ensure they comply with their drug regimens. Furthermore, HIV medication represents a significant cost for defendants. See Docket # 99, SOF ¶ 53 (noting that in fiscal years 2008-2011, HIV medications cost approximately $5 million per year and constituted forty-two percent of pharmacy expenditures, spent on two percent of the inmate population). Because defendants can only receive a monetary credit for returned, unused medications which have not previously been distributed to inmates, id. ¶¶ 54-56, retaining possession of HIV medications enables

---

[6]Turner lists four factors to consider when evaluating the constitutionality of a prison regulation: (1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether alternative means to exercise the right exist; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation. 482 U.S. at 89-90.

potentially substantial cost savings.  The new protocol is therefore rationally connected to the interest in financial prudence.

The other <u>Turner</u> factors also support the constitutional validity of the new protocol.  The second factor is satisfied because inmates may still seek accommodations to allay their privacy concerns.  <u>See</u> <u>id.</u> ¶ 177 (citing 103 DOC 207.04).  As for the third, the medication line policy is likely to increase available prison resources by reducing medical waste.  Finally, plaintiff presents no policy alternatives that "fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests."  <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 418 (1989).  Therefore, the new protocol bears a rational relation to legitimate penological interests and the right plaintiff asserts may be curtailed.

## IV.   Conclusion

Defendants' motion for summary judgment (Docket ## 87, 89) is ALLOWED.  Plaintiffs' motion to supplement its statement of additional material facts (Docket # 113) is DENIED AS MOOT.  Judgment will be entered accordingly.


       October 3, 2013                              /s/Rya W. Zobel

           DATE                              RYA W. ZOBEL
                                     UNITED STATES DISTRICT JUDGE